J-A32032-15
J-A32033-15
J-A32034-15
J-A32035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JEROME ROBERT SMITH | |
| Appellee | No. 96 WDA 2015 |

Appeal from the Order entered December 8, 2014
In the Court of Common Pleas of Potter County
Criminal Division at No: CP-53-MD-0000100-2011

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JARRETT RAND SMITH | |
| Appellee | No. 97 WDA 2015 |

Appeal from the Order entered December 8, 2014
In the Court of Common Pleas of Potter County
Criminal Division at No: CP-53-MD-0000100-2011

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EILEEN RIFKA SMITH | |
| Appellant | No. 98 WDA 2015 |

J-A32032-15
J-A32033-15
J-A32034-15
J-A32035-15

Appeal from the Order entered December 8, 2014
In the Court of Common Pleas of Potter County
Criminal Division at No: CP-53-MD-0000100-2011

COMMONWEALTH OF PENNSYLVANIA

Appellant

v.

KRISTA EVELAND

Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 99 WDA 2015

Appeal from the Order entered December 8, 2014
In the Court of Common Pleas of Potter County
Criminal Division at No: CP-53-MD-0000100-2011

BEFORE:  SHOGAN, OTT, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 23, 2016**

The Commonwealth appeals from the orders entered by the Court of
Common Pleas of Potter County dismissing the charges against Jerome
Robert Smith, Jarrett Rand Smith, Eileen Rifka Smith, and Krista Eveland,
(collectively, the "Appellees") pursuant to Pennsylvania Rule of Criminal
Procedure 600.  For the reasons stated below, we reverse and remand.

The underlying factual and procedural background can be summarized
as follows.[1]  On June 18, 2009, Trooper Michael Murray of the Pennsylvania

---

[1] Unless otherwise stated, the factual background is taken from the affidavits
of probable cause.

- 2 -

State Police (PSP) met with then-Potter County President Judge John Leete, in a meeting also attended by then-Potter County District Attorney Dawn Fink and Coudersport Borough Police Sergeant James Collins. At the meeting, Judge Leete informed the attendees he was told that two local attorneys, Jarrett Smith and Donna Albright, attempted to purchase a baby from Ms. Paula Larson. The transaction, however, did not go through. He also relayed that he heard that Jarrett Smith had recently facilitated the sale of Krista Eveland's newborn baby, that the baby was in the process of being adopted, and that the adoption proceedings were pending before the Potter County Court of Common Pleas, Case No. 3-2009. Based on the information provided by Judge Leete, Trooper Murray initiated an investigation into the matter.

On July 10, 2009, the date set for the finalization of the adoption of Eveland's baby, Trooper Murray interviewed Donna Albright and Krista Eveland. Trooper Murray learned that Krista Eveland entered into an agreement with Jarrett Smith and Donna Albright to exchange Eveland's newborn infant for cash and other consideration and to transfer the baby to Jerome Smith (Jarrett Smith's brother) and Eileen Rifka Smith. The transfer of the baby was supposed to be presented to the Potter County trial court as a legitimate adoption.

On the same day, Trooper Murray informed Judge Leete that the report he received of an illegal transaction involving Krista Eveland's child

- 3 -

appeared founded. At the hearing, Judge Leete informed the parties that the hearing was to be continued in light of allegations of financial improprieties, and disclosed to the parties his role in reporting the alleged improprieties.

After conducting additional investigation, criminal charges were filed against Appellees on May 20, 2011.[2] Preliminary hearings were scheduled to occur in Potter County before Magisterial District Judge (MDJ) Easton on May 27, 2011 for Jarrett Smith, and on June 1, 2011 for Krista Eveland. However, on the eve of the hearings, MDJ Easton recused herself from hearing the cases. MDJ Easton notified the Potter County Court Administrator Jenny Saulter she had to recuse herself because Appellee Jarrett Smith was a well-known attorney practicing in Potter County. Eventually, the other two Potter County magisterial district judges also declined to hear the cases against Appellees.

Ms. Saulter contacted Tioga County and Lycoming County in an effort to find an MDJ willing to hear the cases. No judge accepted the cases. Finally, Ms. Saulter contacted the Administrative Office of Pennsylvania Courts to have an MDJ assigned to hear the cases. AOPC contacted, among others, MDJ Beck, who accepted the assignment. On July 6, 2011, Potter

---

[2] While all individuals involved in the transaction were charged with various crimes, Donna Albright is not a party to this appeal.

County President Judge Minor issued an order formally appointing MDJ Beck as the presiding MDJ and setting September 22, 2011 as the date for the preliminary hearings. The September 22, 2011 date was chosen based on Judge Beck's availability.

On September 22, 2011, at the preliminary hearing, counsel for Eveland orally moved to preclude the Commonwealth from using evidence in the criminal case information from the adoption case. Promptly, all other present defendants also joined the motion. Given the novelty of the objection raised by Appellees,[3] the Commonwealth asked for a continuance to address the motions and acknowledged that the continuance had to be charged to the Commonwealth for purposes of Rule 600.[4] Despite Appellees'

_____

[3] Two issues, apparently never addressed before by an appellate court, were raised at the preliminary hearing: (i) whether the Adoption Act's restriction on disclosure of "adoption information" without court approval applies in prosecutions of fraudulent adoptions, and (ii) in the event court approval is required, the quantum of evidence necessary for court approval of disclosure of information. The trial court eventually agreed with the Commonwealth's characterization of the issues as novel. In its order, the trial court acknowledged that the issues raised in Appellees' motions and the Commonwealth's response thereto were of "compelling" nature. *See* Trial Court Order, 11/21/11.

[4] In its prior opinion, the trial court stated that entire period of delay in bringing Appellees to trial was chargeable to the Commonwealth because the Commonwealth so acknowledged at the September 22, 2011 hearing. Trial Court Opinion, 7/19/2013, at 3 (citing N.T. Preliminary Hearing, 9/22/11, at 27). In the trial court's view, at the hearing, the Commonwealth agreed to have all time elapsed for the disposition of the parties' motions charged against the Commonwealth. The record does not support the trial court's

*(Footnote Continued Next Page)*

objections, MDJ Beck granted the Commonwealth's request.  The preliminary

hearing was continued to November 21, 2011, the earliest available date to

the presiding judge.

On October 20, 2011, the Commonwealth filed a motion seeking

approval for the disclosure of information relating to the adoption of

_(Footnote Continued)_ ─────────────

conclusions.  Indeed, a fair reading of the notes of testimony of the preliminary hearing reveals the Commonwealth agreed to be charged for the continuance (approximately 2 months) so it could respond to Appellees' oral motions.  ***Id.*** at 23.  The Commonwealth responded to Appellees' oral motions by filing its own motion on October 20, 2011.

In its latest opinion, the trial court cites the notes of testimony of the Rule 600 September 12, 2014 hearing as supporting its finding the Commonwealth agreed to be charged for all of the delay in bringing Appellees to trial.  Trial Court Opinion, 12/8/14, at 2 (citing N.T. Rule 600 Hearing, 9/12/14, at 24-27).  There is no evidence of such acknowledgment. The pages of testimony relied upon by the trial court merely contain the parties' oral argument to the court.  Thus, the record and/or the pages cited by the trial court in no way support the trial court's conclusions, unless we equate, as the trial court did, Appellees' oral argument to the court with substantive evidence.

In the same vein, Appellees also argue that the Commonwealth "express[ly] agree[d]" that "**all**" delay accrued after September 22, 2011 would run against the Commonwealth.  Appellee Eveland's Brief at 17-18 (emphasis in original).  There is no evidence of such agreement, let alone one "express." Appellee Jarrett Smith points to a statement proffered by the Commonwealth that would support the "express agreement" argument. Appellee Jarrett Smith's Brief at 8 (citing N.T. Preliminary Hearing, 9/22/11, at 11-18 ("we've all agreed on that this time it is on the Commonwealth")). The statement, read in isolation, is misleading. As noted, a fair reading of the entire record shows the Commonwealth agreed to be charged only for the two-month (September 22, 2011-November 21, 2011) continuance.

Eveland's child. On October 25, 2011, Eveland filed an answer to the Commonwealth's motion and four additional countermotions seeking additional relief beyond the preclusion of the adoption information.

On October 27, 2011, Potter County President Judge Minor recused himself from the instant matters, appointing Northumberland County President Judge Sacavage to specially preside as to all matters, including the preliminary hearing. In the order appointing Judge Sacavage there is no mention of MDJ Beck or explanation why a preliminary hearing was to be held before a common pleas court judge. On the same day, Jerome Smith and Eileen Smith filed a response to the Commonwealth's motion and four additional countermotions for additional relief (namely, petitions for writ of habeas corpus, appointment of guardian *ad litem*, sealing of the record, and prosecutorial misconduct).

On November 16, 2011, Jarrett Smith filed a response to the Commonwealth's motion and five countermotions seeking additional relief (namely, petitions for writ of habeas corpus, appointment of guardian *ad litem*, sealing of the record, prosecutorial misconduct, and a motion to dismiss). On November 17, 2011, four days prior to the preliminary hearing scheduled for November 21, 2011, Judge Sacavage conducted a telephone status conference. On November 21, 2011, Judge Sacavage entered the following order:

> AND NOW, this 17[th] day of November, 2011, preliminary hearing(s) in the above captioned matters, previously scheduled for the 21[st] day of November, 2011 are hereby CONTINUED pending resolution of Commonwealth's Motion for Order Granting Authority to Disclose and Counter-Motions filed by Defendants.[FN]. The preliminary hearing shall be rescheduled at such time as this [c]ourt authorizes the Magisterial District Ju[dge] conducting the hearing to proceed with same.
>
> The [c]ourt also DIRECTS the parties to submit any remaining answers to the motions, briefs in support or opposition of the outstanding motions, or counter-motions related to Commonwealth's Motion for Order Granting Authority to Disclose within ten (10) business days.
>
> _____
>
> FN The pending motions involve compelling legal issues that must be resolved prior to any further proceedings.

Trial Court Order, 11/21/11.

Pursuant to said order, Appellees timely filed their briefs in support of their positions. Similarly, the Commonwealth filed a brief arguing that the Adoption Act's restrictions are inapplicable in the instant case, requesting, in the alternative, that the Commonwealth be granted its motion to disclose information, and requesting that Appellees' motions be denied.[5]

On February 17, 2012, Judge Sacavage scheduled a hearing for April 2, 2012 to address all outstanding motions. On April 2, 2012, the trial court

_____

[5] Appellees' briefs were filed on November 28, 2011 (Eveland), and December 1, 2011 (Jerome and Eileen Smith), respectively. The Commonwealth filed its brief on December 7, 2011, after requesting and obtaining a short extension of time to file its brief.

heard argument on the various outstanding motions, but neither heard testimony nor took any other evidence. At the close of the argument, defense counsel raised a Rule 600 issue. Judge Sacavage took the matter under advisement. On May 25, 2012, while the matters were still under advisement, Appellee Eveland filed a Rule 600 motion, followed by Jerome Smith and Eileen Rifka Smith's Rule 600 motion (filed June 6, 2012), and Jarrett Rand Smith's Rule 600 motion (filed June 11, 2012). The Commonwealth responded to said motions on June 12, 2012, rejecting Appellees' Rule 600 arguments.

On March 5, 2013, without holding a hearing, the trial court entered orders dismissing the criminal charges in their entirety against Appellees. The Commonweal timely appealed on April 4, 2013. The trial court issued its Pa.R.A.P. 1925(a) opinion on July 19, 2013.

On appeal, the Commonwealth argued that: (i) the trial court abused its discretion in dismissing the charges pursuant to Rule 600 without an evidentiary hearing, and (ii) in the alternative, the trial court abused its discretion in granting Appellees' Rule 600 motions because the trial court's ruling was based on an inaccurate recitation of the facts and misapplication of pertinent law. On June 30, 2014, a panel of this Court agreed with the

Commonwealth and vacated and remanded the case to the trial court for an evidentiary hearing on the first issue. We did not address the second issue.[6]

On remand, the trial court conducted a hearing on Appellees' Rule 600 claims. At the hearing, the Commonwealth presented the testimony of Ms. Jennifer Saulter, the Potter County Court Administrator. Additionally, with the agreement of the parties, 32 exhibits were admitted into evidence. *See* N.T. Rule 600 Hearing, 9/12/14, at 4-9.

On December 8, 2014, Judge Sacavage filed an order dismissing with prejudice all charges against all Appellees. On the same day, Judge Sacavage filed an opinion in support of said order. This appeal followed.

On appeal, the Commonwealth raises the following issues:

I.   Whether the trial court's grant of Rule 600 relief constitutes a reversible abuse of discretion given that its decision is grounded in a recitation of the facts . . . grossly inaccurate, incomplete, deceptive, and contradicted by the record[.]

II.  Whether the trial court's grant of Rule 600 relief constitutes a reversible abuse of discretion given that the trial court flagrantly misapplied the law governing Rule 600 claims by, among other things: (A) applying the wrong version of Rule 600; (B) failing to apply binding precedent on multiple points of law; and (C) inventing new rules of law that do not exist and have never heretofore been recognized in the Commonwealth[.]

---

[6] *See Commonwealth v. Eveland*, *et al.*, Nos. 591-594 WDA 2013, unpublished memorandum at 3 n.2 (Pa. Super. filed June 30, 2014).

III. Whether the trial court's grant of Rule 600 relief constitutes a reversible abuse of discretion given that the trial court's misapplication of the governing law to its inaccurate perception and statement of the relevant facts resulted in a manifestly unreasonable judgement[.]

IV. Whether the trial court's entry of an Order definitively staying all proceedings 60 days after the preliminary hearings were continued and literally prohibiting the conduct of preliminary hearings until after the [c]ourt ruled on specific outstanding motions, coupled with an abject refusal to rule on those motions and a subsequent grant of Rule 600 relief based on the outrageous finding that the Commonwealth had failed to bring the cases to trial constitutes a manifestly unreasonable judgment that requires reversal and reinstatement of charges[.]

Commonwealth's Brief at 5.

At issue here is the trial court's order granting Appellees' motions pursuant to Rule 600. The Commonwealth argues that the trial court abused its discretion in doing so. We agree.

We review challenges to Rule 600 rulings pursuant to the following standard and scope of review:

In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review . . . is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of

- 11 -

> the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

***Commonwealth v. Ramos***, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*).

Preliminary, we first must address which version of Rule 600 (pre or post-2012 amendment) controls this matter. The trial court, noting a footnote contained in our previous Memorandum, relied on the pre-2012 version of Rule 600. The Commonwealth argues the trial court erred in doing so. Specifically, relying on ***Commonwealth v. Thompson***, 93 A.3d 478 (Pa. Super 2014), ***Commonwealth v. Horne***, 89 A.3d 277 (Pa. Super. 2014), and ***Commonwealth v Armstrong***, 74 A.3d 228 (Pa. Super. 2013), the Commonwealth argues that the new Rule 600 should be applied in cases, like the instant one, where the Rule 600 hearing and the trial court's evaluation/determination of the issue occurred after July 1, 2013, the effective date of the new Rule 600.

Even if we were to agree with the Commonwealth, our analysis does not change. At issue is whether there is any excludable/excusable time for purposes of Rule 600. The standard used for making such a determination is the same under the current as well as the former version of Rule 600. Notably, ***Armstrong***, ***Thompson***, and ***Horne***—the three cases cited by the

- 12 -

J-A32032-15
J-A32033-15
J-A32034-15
J-A32035-15

Commonwealth[7]—all relied on **Ramos**, a pre-2012 amendment case, for the proper recitation of the standard for purposes of Rule 600 time computation. Indeed, the new version of Rule 600 is a codification of changes developed in case law. The Comment states as follows:

> In 2012, former Rule 600 was rescinded and new Rule 600 adopted to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule. The new rule incorporates from former Rule 600 the provisions concerning the commencement of trial and the requirement of bringing a defendant to trial within 365 days of specified events, new paragraph (A), and the 120-day or 180-day time limits on pretrial incarceration, new paragraph (B). New paragraph (C), concerning computation of time and continuances, and new paragraph (D), concerning remedies, have been modified to clarify the procedures and reflect changes in law.

Rule 600, Comment.

Thus, given that the method of computation of time is identical under either version, it is irrelevant which one the trial court used.[8] In making such determination, we employ the following standard:

---

[7] The Commonwealth also cites **Commonwealth v. Colon**, 87 A.3d 352 (Pa. Super. 2014) for the proposition that, under the circumstances of the case, the new version of Rule 600 should be applied. Commonwealth's Brief at 39. We note that **Colon** applied the older version of Rule 600. Therefore, reliance on **Colon** is misplaced.

[8] Appellee Eveland similarly argues the analysis under both versions is identical. **See** Appellee Eveland's Brief at 14-17. Appellees Eileen Smith and Jerome Smith do not take any position on this matter, relying instead on Appellee Eveland's position on this matter. Appellee Jarrett Smith, in his brief, quoted the newer version of Rule 600, but relied on cases applying the
*(Footnote Continued Next Page)*

- 13 -

> To summarize, the courts of this Commonwealth employ three steps ... in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.
>
> If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600([C]). As we have explained, Rule 600[] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[C] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Armstrong*, 74 A.3d at 236 (citing *Ramos, supra,* at 1103) (footnote and citations omitted).[9]

_____
*(Footnote Continued)*

prior version of Rule 600 in support of his argument. *See* Appellee Jarrett Smith's Brief at 11-15 (citing, among others, *Ramos* and *Colon*).

[9] In the context of Rule 600, there is a distinction between "excludable time" and "excusable delay":

> Excludable time includes delay caused by the defendant or his lawyer. Concomitantly, excusable delay occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth.

*(Footnote Continued Next Page)*

Here, there is no dispute that the mechanical run date, *i.e.*, the 365th day after the filing of the criminal complaint, is May 21, 2012. Appellees claimed, and the trial court agreed, that the Commonwealth violated Rule 600 in not trying Appellees by said date. We disagree.

> A defendant . . . is not automatically entitled to discharge under Rule 600 where trial starts more than 365 days after the filing of the complaint. Rather, Rule 600 provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time. The adjusted run date is calculated by adding to the mechanical run date, *i.e.,* the date 365 days from the complaint, both excludable and excusable delay.

***Roles***, 116 A.3d at 125 (internal quotation marks and citations omitted).

At issue here is whether there is any excludable/excusable time for purposes of Rule 600. The trial court seemed to focus its attention on two specific instances of delay, namely, the delay resulting from the appointment of an MDJ, and the delay resulting from Appellees' motions. With regard to the first instance, the trial court summarily concluded that the Commonwealth presented no evidence to address what was excludable/excusable.[10] In response to the Commonwealth's argument that

*(Footnote Continued)* ──────────

***Commonwealth v. Roles***, 116 A.3d 122, 125 (Pa. Super. 2015).

[10] The Commonwealth argues the trial court erred in finding the evidence presented at the Rule 600 hearing sufficient to prove the delay in the appointment of the MDJ was attributable to the Commonwealth. A challenge
*(Footnote Continued Next Page)*

- 15 -

trial delays were attributable to Appellees' motions, the trial court summarily noted that the mere filing of pretrial motions does not automatically result in excludable time (relying on **Commonwealth v. Hill**, 736 A.2d 578 (Pa. 1999)). As such, the trial court granted Appellees' motions to dismiss. A review of the record and relevant caselaw does not support the trial court's conclusory statements and legal conclusions.

In the trial court's view, the testimony by the court administrator was not sufficient to show that the delay in selecting a willing MDJ to hear the cases was excusable. We disagree. The trial court neglects to mention that the court administrator specifically stated that the delay in scheduling a preliminary hearing was due to difficulties in finding a judge who had no conflicts. N.T. Rule 600 Hearing, 9/12/14, at 13-15.[11] The court

_(Footnote Continued)_ ─────────────────

to the sufficiency of the evidence is question of law, and we are not bound by the trial court's conclusions of law. Additionally, here, it is worth noting that the trial court did not question the credibility of Ms. Saulter, but merely the sufficiency of her testimony to show the Commonwealth's entitlement to an exclusion. Finally, it should be noted that the quantum of proof required under the circumstances is a preponderance of the evidence. In other words, "[a] Rule 600 motion requires a showing of due diligence by a preponderance of the evidence for the Commonwealth to avail itself of an exclusion." **Commonwealth v. Selenski**, 994 A.2d 1083, 1089 (Pa. 2010) (citation omitted).

[11] Judge Sacavage acknowledged that he had been appointed to preside over these matters "due to conflicts." N.T. Hearing, 4/2/12, at 6. Apparently, however, he did not consider the thorny history leading to his appointment relevant to his Rule 600 analysis.

administrator also testified that once a judge was found, the additional delay was due to the judge's availability and courtroom availability. *Id.* at 15. Given these facts, we conclude that the delay in the selection of a willing MDJ was outside the Commonwealth's control. Additionally, there is no evidence of the Commonwealth's lack of due diligence in pursuing this matter, nor did the trial court point to any of such instances, aside from a bald, uncorroborated statement to that effect. Accordingly, the period elapsed (118 days) from the date set for the original preliminary hearing (May 27, 2011) to the date the hearing was continued to (September 22, 2011) is excusable for purposes of Rule 600. *See Ramos*, 936 A.2d at 1103 (Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence); *Commonwealth v. Frye*, 909 A.2d 853, 859 (Pa. Super. 2006) (periods of delay which are attributable to court congestion constitute excusable delay).

Next, the trial court charged the Commonwealth for the period elapsed from November 21, 2011 to March 5, 2013[12] (470 days), during which the

---

[12] As noted above, the September 22, 2011 preliminary hearing was continued to November 21, 2011 on the Commonwealth's request. This period is therefore chargeable to the Commonwealth. On November 21, 2011, the trial court halted all proceedings until disposition of outstanding motions, which occurred on March 5, 2013.

J-A32032-15
J-A32033-15
J-A32034-15
J-A32035-15

trial court took the matter under advisement to deliberate on the multiple outstanding motions. We disagree.

As noted above, the trial court cited *Hill* for the proposition that a defendant "is not automatically rendered unavailable for trial by the mere filing of a pretrial motion." Trial Court Opinion, 12/8/14, at 4 (citing *Hill*). The trial court misreads *Hill*. It is well-established that delays caused by pretrial motions constitute excludable time where the pretrial motion renders the defendant unavailable. *Hill*, 736 A.2d at 587. It is also well-established that **a defendant is unavailable for trial if a delay in the commencement of trial is caused by the filing of the pretrial motion**. *Id.* at 587-88 (emphasis added). Finally, it is well-established that if a delay is created, in order to establish that the delay is excludable, the Commonwealth must demonstrate, by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion. *Id.*

Here, the best evidence that Appellees' motions delayed the start of the trial can be found in the order issued by the very same court that found no evidence of excludable/excludable time in connection with Appellees' motions. The order, again, in its entirety, reads as follows:

> AND NOW, this 17th day of November, 2011, preliminary hearing(s) in the above captioned matters, previously scheduled for the 21st day of November, 2011 are hereby **CONTINUED pending resolution of Commonwealth's Motion for Order**

- 18 -

> **Granting Authority to Disclose and Counter-Motions filed by Defendants.[FN].  The preliminary hearing shall be rescheduled at such time as this [c]ourt authorizes the Magisterial District Ju[dge] conducting the hearing to proceed with same**.
>
> The [c]ourt also DIRECTS the parties to submit any remaining answers to the motions, briefs in support or opposition of the outstanding motions, or counter-motions related to Commonwealth's Motion for Order Granting Authority to Disclose within ten (10) business days.
>
> _____
>
> FN  The pending motions involve **compelling legal issues** that **must be resolved prior to any further proceedings**.

Trial Court Order, 11/21/11 (emphasis added).

According to the trial court's own words, therefore, the disposition of the "compelling legal issues" raised in the "pending motions"[13] was a condition precedent to the preliminary hearings and, by implication, trials.[14]

_____

[13] At the time the November 21, 2011 order was issued, Appellees had not raised or filed their Rule 600 motions.  The pending motions addressed in said order, therefore, included Appellees' oral motions to preclude the Commonwealth from using as evidence in the criminal case information from the adoption case, Appellees' multiple countermotions, and the Commonwealth's response (motion) to Appellees' motions.

[14] It is worth noting that the order did not continue the disposition of the motions until trial.  Rather, it continued the preliminary hearings pending disposition of the motions.  This fact alone shows that the motions delayed the commencement of the trials.  In **Hill**, the Supreme Court noted:

> We are aware that there is a common practice among trial courts to defer the consideration of a pretrial motion until the commencement of trial.  We wish to emphasize that, based on

*(Footnote Continued Next Page)*

Accordingly, the trial court halted the preliminary hearing proceedings, and ordered them not to be resumed unless otherwise authorized by the trial court. In the meantime, the trial court entertained the "pending motions" at a hearing on April 2, 2012, and disposed of them on March 5, 2013. Thus, the delay in the start of the trial is attributable to the filing and litigation of Appellees' motions.[15] Additionally, we note the trial court did not make any finding, nor could we find any evidence, of the Commonwealth's lack of diligence in opposing or responding to Appellees' pretrial motions. Indeed, the record shows that the issues raised in the motions were of a "compelling" nature. Trial Court Order, 11/21/2011.

*(Footnote Continued)* _____

> our holding, once a court defers the consideration of a pretrial motion until trial, the time during which the pretrial motion is pending is not excludable from the Rule [600] calculation. A defendant is not unavailable for trial within the meaning of Rule [600] when a court continues the consideration of a defendant's pretrial motion until trial, since it cannot be said that such motion is causing a delay in the commencement of trial.

*Hill*, 736 A.2d. at 587 n.7.

[15] In *Hill*, our Supreme Court that "in considering Hill's pretrial motions, the trial court conducted numerous hearings and other proceedings between May 2, 1994 and July 17, 1995. Thus, due to Hill's filing of pretrial motions, the commencement of his trial was delayed." *Hill*, 736 A.2d at 588. Similarly, here, the trial court conducted a hearing on the motions. Accordingly, we also conclude that the filing and litigation of Appellees' motions resulted in a delay in the commencement of their trials.

While the trial court was considering Appellees' motions and countermotions, and the Commonwealth's response thereto, Appellees raised a Rule 600 issue. As noted above, the Rule 600 issues were raised orally at the argument set forth to address the "pending motions" mentioned in the November 21, 2011 order. **See** N.T. Hearing, 4/2/12, at 35-40; **see also** Appellee Jerome Smith's Brief at 14 (at the April 2, 2012 hearing "[d]efense counsel raised the issue of speedy trial and Rule 600"). Inexplicably, the trial court charged the Commonwealth also for the period elapsed from the raising of the Rule 600 issues to their disposition. The trial court erred in doing so. The trial court ignored that the period elapsed to decide Appellees' Rule 600 motions is excludable time. **See**, **e.g.**, **Commonwealth v. Booze**, 953 A.2d 1263, 1277 (Pa. Super. 2008); **Commonwealth v. Hyland**, 875 A.2d 1175, 1191 (Pa. Super. 2005); **Commonwealth v. Williams**, 726 A.2d 389, 392 (Pa. Super. 1999) ("The period of time between a defendant's motion to dismiss pursuant to Rule [600] and the trial court's rendering a decision on the motion is excludable time under Rule [600].").[16] Thus, the delay resulting from Appellees' motions to dismiss under Rule 600 is also excludable.[17]

_____

[16] For purposes of the speedy trial rule, the relevant excludable period attributable to defendant's omnibus pretrial motion started when the defendant asked for a hearing date on the Rule 600 motion he intended to
*(Footnote Continued Next Page)*

- 21 -

The trial court next found the Commonwealth failed to show due diligence in pursing this matter by failing to keep "some sort of record-keeping system that would track cases for purposes of Rule 600." Trial Court Opinion, 12/8/2014, at 6 (citing **Commonwealth v Browne**, 584 A.2d 902 (Pa. 1990) (plurality).[18] Based on its interpretation of **Browne**, the trial court held that the Commonwealth's failure to maintain such a system amounted to lack of due diligence in the instant matter.[19]

The trial court misreads **Browne**. A careful reading of **Browne** does not support the trial court's use of that case. In **Browne**,

---

*(Footnote Continued)* ————————————

file, and not on the subsequent date when defendant actually filed his pretrial motion. **Hyland**, 875 A.2d at 1191; **Booze**, 953 A.2d at 1277 ("our ruling [in **Hyland**] *expanded* the excludable time to include the period from when the defendant first advised the court that he intended to file the [Rule 600] motion to its eventual disposition") (emphasis in original).

[17] As noted above, Appellees' Rule 600 issues were raised while the disposition of the prior motions was still pending, and were decided by the trial court concurrently with the prior motions and countermotions. Thus, the duration of time elapsed from the time Appellees raised Rule 600 issues to the time of their disposition partially overlaps with the filing and disposition of Appellees' prior motions and countermotions.

[18] As noted, **Browne** is a plurality opinion. A plurality decision is not binding authority. **See**, **e.g.**, **Commonwealth v. Thompson**, 985 A.2d 928, 937 (Pa. 2009).

[19] The trial court fails to mention that keeping track of cases not yet disposed of is also a duty of the trial court. **See Hill**, 736 A.2d at 587 n.7 (citing Pennsylvania Rule of Judicial Administration No. 703).

- 22 -

the defendant was issued a Notice of Arraignment by the district justice at the conclusion of the preliminary hearing. **Under the system of arraignments and criminal trials in the relevant county**, the trial date that corresponded to the defendant's arraignment date resulted in a situation where the trial would not commence until well beyond the mechanical run date under Rule 1100. **Relevant to our ultimate decision**, **under the local county rules applicable in *Browne***, the district attorney was responsible for conducting the arraignments. *Id.* **at 904.** When the potential Rule 1100 violation became apparent, the Commonwealth sought an extension of the run date, which was denied by the trial court, resulting in the eventual grant of the defendant's Rule 1100 motion. The Superior Court reversed and reinstated the charges, finding that the Commonwealth exercised due diligence and that the delay was due to the district justice's scheduling of the arraignment.

We reversed, concluding that the Commonwealth failed to exercise due diligence. We stated that to act with due diligence, "prosecutors must do everything reasonable within their power to see that the case is tried on time." *Id.* at 905 (internal citation omitted). We determined that the district attorney's actions were not reasonable in *Browne:* "**Particularly in light of the Lancaster County District Attorney's heavy responsibility under Local Rule 303** (with respect to conducting arraignments) ..., it is not unreasonable or erroneous to expect the District Attorney's Office to track arraignment dates on a routine basis." *Id.* at 905–06.

*Bradford*, 46 A.3d at 703-704.

This is not the case here. There is no evidence the Commonwealth in the instant case shared the same responsibility in the judicial administration process as the Commonwealth had in *Browne*. As such, *Browne* is distinguishable. In addition, the case is distinguishable because the delay in the instant matters is not due to the Commonwealth's failure to keep a tracking system. As noted above, the delay here is attributable to numerous

- 23 -

judge recusals, Appellees' motions, and the trial court's failure to address all outstanding motions in a prompt manner. *See Bradford*, 46 A.3d at 704 ("[W]e specifically distinguished *Browne,* where the delay was attributed to the district attorney's office lack of record keeping, from [*Commonwealth v Monosky*, 511 A.2d 1346 (Pa. 1986)] where the delay was attributable to the district justice.").

Finally, the trial court noted that the Commonwealth's lack of due diligence also is shown by the fact it did not list the cases for trial "or at the very least [take] other reasonable steps (perhaps in this case inquiring about a rescheduling of the preliminary hearing, for example)." Trial Court Opinion, 12/8/2014, at 7. It is unclear how the Commonwealth could have listed the cases for trial when a plethora of motions—whose disposition was made a condition precedent by the trial court to both preliminary hearings and trials—were still outstanding, or how it could have circumvented a specific order of the same court continuing the preliminary hearing pending disposition of said motions, or how the rescheduling of the preliminary hearing to an earlier date[20] could have made a difference given that it took

---

[20] The date for the hearing was set by the trial court apparently without the parties' input. *See* Trial Court Order, 2/17/12. Said order was issued approximately two months after the entry of the November 21, 2011 order continuing the matter pending resolution of the motions. The trial court provided no reasons why it took two months to set a hearing date.
*(Footnote Continued Next Page)*

- 24 -

337 days—from the date of the April 2, 2012 hearing until the date of the March 5, 2013 decision—for the trial court to render a decision on the outstanding motions. In other words, short of filing periodic friendly reminders with the trial court inquiring about the status of the outstanding motions, there is no indication that the Commonwealth lacked due diligence in pursuing this matter. Indeed, the record shows that the Commonwealth attended and was prepared for each hearing, timely filed its briefs, and reasonably opposed Appellees' motions. Upon review of the record, we conclude, therefore, the Commonwealth met the due diligence standard in this matter.

In conclusion, the trial court erred in granting Appellees' motions to dismiss pursuant to Rule 600. As noted, the mechanical run date was May 21, 2012. The amount of excludable/excusable time is equal to 588 days (118+470). The adjusted date, as of March 5, 2013 when the trial court entered the order dismissing the charges, was Monday, December 30, 2013.[21] Thus, as of March 5, 2013, the Commonwealth had still 301 days to

_____ *(Footnote Continued)* _____

Additionally, we have reason to believe that the April 2, 2012 date was the first available date to the trial court. Thus, how a request for rescheduling the hearing to an earlier date would have made a difference in the overall delay remains unexplained.

[21] The adjusted date fell on Saturday, December 28, 2013.

try Appellees without violating Rule 600.[22]  Accordingly, the trial court erred in concluding that a violation of Rule 600 had occurred as of March 5, 2013.[23]

For the above stated reasons, we conclude that the trial court abused its discretion in granting Appellees' motions to dismiss.  Accordingly, we reverse the orders of the trial court and remand for disposition of outstanding motions.

Orders reversed. Cases remanded. Jurisdiction relinquished.

Judge Ott joins the memorandum.

Judge Shogan concurs in the result.

---

[22] Even if we were to agree with the trial court that the delay resulting from the appointment of an MDJ (118 days) and the parties' original motions and countermotions (470 days) were attributable to the Commonwealth, the trial court failed to exclude from the computation the delay resulting from the Rule 600 motions.  Rule 600 issues were raised on April 2, 2012 and were disposed of on March 5, 2013.  As noted, this period (337 days) is excludable.  **See Booze**, **supra**; **Hyland**, **supra**; **Williams**, **supra**. Because the trial court failed to recognize the excludable nature of that period, it erroneously granted Appellees' Rule 600 motions.  This ground alone is sufficient to reverse and remand to the trial court.

[23]  After the trial court granted Appellees' Rule 600 motions, the Commonwealth appealed to this Court.  While not expressly raised here, it should be noted that delays resulting from appellate reviews of pretrial motions are also excusable.  **See Selenski**, 994 A.2d at 1090; **Commonwealth v. Boczkowski**, 846 A.2d 75, 83 n.7 (Pa. 2004).

J-A32032-15
J-A32033-15
J-A32034-15
J-A32035-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/2016